VARLEY DUPLEX MAGNET CO. v. OSTHEIMER et al.

(Circuit Court of Appeals, Second Circuit. March 13, 1911.)

No. 121.

DEPOSITIONS (§ 94*)—ADMISSIBILITY IN EVIDENCE—NONRESPONSIVENESS OF ANSWERS—DISCRETION OF COURT.

Where a party, examined in France by commission, was asked if he saw a certain person in May, and by the next question to state the conversation between them, and he answered that he did not remember seeing such person in May, but saw him in March, and in answer to the next question stated the conversation which occurred then, it was within the discretion of the court to admit such testimony, although not responsive; the adverse party having had notice on the return of the deposition of the correction in the date, and not having applied for leave to cross-examine on the point.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 269-275; Dec. Dig. § 94.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by George R. Ostheimer and another against the Varley Duplex Magnet Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

See, also, 159 Fed. 655, 86 C. C. A. 523.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Southern District of New York, in favor of defendants in error, who were plaintiffs below. The judgment was entered upon a verdict rendered on a retrial of the action. A judgment in favor of plaintiffs on the first trial was reversed for error in the admission of testimony. In our opinion (159 Fed. 655, 86 C. C. A. 523) the cause of action was briefly stated as follows:

"The action is to recover damages for fraud. The complaint alleges in substance that in December, 1899, defendant gave a written option to one Drake for the sale of 49 patents issued in certain foreign countries for $600,000, to expire March 1, 1900, but with the privilege of a further extension for four months upon the payment of $20,000; that Drake entered into negotiations with the plaintiffs for the sale of said option and patents; that, the original option being about to expire, the plaintiffs, induced by and relying upon the statements therein, paid to the defendant two-thirds of said $20,000 for the extension thereof, the remaining one-third being paid by said Drake; that at the time of the execution of said option, and of said payment, the defendant did not own said patents, and the same had not been issued or applied for; that the representations contained in said option were false and fraudulent; and that the plaintiffs have been damaged. The answer admits the making of the option and the payment for the extension thereof. It also admits that the patents mentioned in the option had not been actually is-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sued at the time it was extended, but alleges that Drake was aware of this fact, and informed the plaintiffs, who at all times knew and approved the situation regarding the patents. It denies any statement which ever deceived or misled the plaintiffs."

Since the first trial the answer has been amended so as to deny that the two-thirds of $20,000 was paid by the plaintiffs, but it avers that the $20,000 was paid to the defendant by Drake, whom it alone knew, and it denies that the payments were made in the belief that the European patents had actually been issued.

Treadwell Cleveland (Harry W. Hayward, of counsel), for plaintiff in error.

Coudert Bros. (F. R. Coudert and Paul Fuller, Jr., of counsel), for defendants in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). Our former opinion may be consulted for a statement of the testimony and its bearing upon the issues. Plaintiff's case on the first trial rested upon depositions of Drake and of the plaintiffs, taken upon written interrogatories at Paris, France. Before the second trial these three witnesses were re-examined, and their new depositions, or rather parts of them, read in evidence. Defendant's counsel also read in evidence parts of Drake's first deposition. In consequence the testimony in the two records is not identical; but we do not find any such changes in the second record as would call for a restatement of the case. Drake made some statements in his second deposition which, it is contended, are in conflict with some of his earlier statements; but the effect of these variations upon the credit to be given to his later statements was a matter for the jury's consideration.

A letter from Drake to Varley, dated March 22, 1900, which was not in the former record, was also read in evidence by defendant. Defendant places much reliance upon a statement which it contains. Drake therein rehearses various telegrams and letters which had passed between himself and Varley, and in so doing writes:

"I have not referred to your letter written simultaneously with your telegram of the 25th of February reading: 'Option holds good to March 15th. Full particulars by letter.' This very complete and interesting letter was promptly received, and full consideration given thereto by my two immediate associates."

The "very complete and interesting letter" thus referred to is manifestly one dated February 21, 1900, and it contains a statement which would seem to indicate that the patents, or some of them, had not then been issued. Defendant's counsel argues that, if that letter was shown to plaintiffs before they paid their money, they must have known that there were no patents, and so could not have been deceived. He calls attention to the circumstance that the passage quoted is a statement of plaintiffs' own witness, and makes much of the circumstance that they were not asked if it had been shown to them.

So far as we can make out from the record, there is nothing mysterious about the failure to interrogate plaintiffs as to the truth of Drake's quoted statement. The plaintiffs' depositions were taken in Paris October 25, 1909. Drake's deposition was not taken until Janu-

ary 12, 1910. For aught that appears the October depositions may, before that date, have been returned to the circuit court. It is impossible to tell from the transcript of record whether or not the letter was shown to Drake when his deposition was taken. There is no statement that the signature is his. All that appears is that on the second trial, in March, 1910, "defendant's counsel offers letter from Drake to Varley, dated March 22, 1900. Received in evidence, and marked 'Defendant's Exhibit B4.'" For aught that appears, the first intimation that plaintiffs had of Drake's having made the statement contained in the letter may have been when it was thus offered in evidence at the trial.

But, if it be assumed that it was produced and came to the knowledge of plaintiffs' counsel when Drake was examined in Paris two months before, the circumstance that plaintiffs were not asked specifically about Drake's statement was merely one for the consideration of the jury. When the letter of March 22d was admitted in evidence as a writing of Drake's, it was proof only of the fact that on that date Drake informed Varley that he had shown the prior letter to his immediate associates. Neither he nor any one else testified that he did so show it. Ephrussi testified that at the time plaintiffs paid the money he did not know that the patents had not been issued; that "on the contrary [he] understood that they had been issued, otherwise [he] would not have paid the money." The judge instructed the jury that it was for them to find whether Drake in some way communicated what Varley had written him to the plaintiffs, telling them that they might, if they wished, infer that he did. This was all defendant was entitled to, as the testimony stood, and the finding of the jury on this question must be taken as conclusive.

On the former appeal we held that Drake was not the agent of the plaintiffs, was not their partner, and that his knowledge of the nonissue of the patents could not be imputed to them. There is nothing in the present record to call for a different conclusion. It appears here, as it did on the first trial, that defendant made and subsequently signed a written statement, which untruthfully indicated that 49 patents had been issued; that the statement was prepared for the purpose of promoting the sale of foreign patents to "prospective buyers"; and that it was given to Drake for the purpose of negotiating the sale to others than Drake. We see no reason to modify the conclusion expressed in our former opinion that plaintiffs had made out a case which entitled them to go to the jury. No exceptions to the charge have been argued, and the question whether the verdict was against the weight of evidence cannot be considered here.

We do not find that the original prospectus contained statements so inconsistent with the offer to sell "patents issued in England, France, Germany, Belgium, Austria, Norway, and Sweden, making 7 countries —7 patents in each country" that the jury would have been justified in holding that plaintiffs were negligent in not themselves making an independent search of the records of those countries to ascertain whether these 49 patents, or any of them, had been issued. There was no error in the court's refusal to charge as requested on the question of plaintiff's negligence.

Error is assigned to the admission of testimony by Ostheimer as to what took place at a conversation between himself and Drake held between March 1st and 15th. This witness was examined by commission. The fourteenth direct interrogatory asked him if he saw Drake between the 1st and 5th of May. The fifteenth asked, if the answer to the fourteenth question was yes, what took place at the interview. To the fourteenth question the witness answered:  ·

"I do not remember seeing Mr. Drake between the 1st and 15th of May, 1900; but I did see him between the 1st and 15th of March, 1900."

And in reply to the fifteenth question he gave the substance of the interview. Objection was taken to the latter part of the first answer, on the ground that it was "not responsive," and exception reserved. We agree with the trial judge that the objection was good formally, but without merit in essence, and think his disposition of it was a proper exercise of discretion. It is suggested that, since the direct interrogatory referred to a conversation in May, instead of March, defendant was misled, and did not frame cross-interrogatories, because he was not concerned with a conversation in May. But, when the commission was returned, he was advised of the correction made in the date; and, if he had then applied for leave to cross-examine on that point, relief could have been given.

Exception was reserved to the refusal of the court to allow Varley to identify a letter of February 21st as being the letter referred to by him in a telegram sent by him on February 25th, reading as follows:

"Option holds good to March 15th. Full particulars by letter."

We think the witness should have been allowed to answer the question put to him; but the refusal was not harmful, because it is abundantly manifest from the series of letters and telegrams that the one referred to was that of February 21st.

We find nothing that calls for discussion in any of the other assignments of error.

The judgment is affirmed.